UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

DAVID TAYLOR,

    Plaintiff,

 -vs-                                 Case No.
                                         Hon.

STEWART ALLEN MOTORS LLC,

    Defendant.

## COMPLAINT AND JURY DEMAND

## JURISDICTION

1. This court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337.

2. As to any supplemental claims set forth herein, there are no exceptional circumstances or other compelling reasons for this Court to decline jurisdiction and the interests of justice would best be served if this Court heard these claims along with the federal claims.

## PARTIES

3. The Plaintiff to this lawsuit is David Taylor who resides in Eaton Rapids, Michigan in Eaton County.

1

4.  The Defendant to this lawsuit is Stewart Allen Motors LLC ("SAMLLC") which is a corporation doing business in Michigan and which by statute and condition of licensing, may be served through its irrevocable resident agent, the Bureau of Regulatory Services, Business Licensing and Regulation Division, State of Michigan, Cashier's Unit, 7064 Crowner Dr., Dimondale, MI 48821.

## VENUE

5.  The transactions and occurrences which give rise to this action occurred in Monroe County.

6.  Venue is proper in the United States District Court for the Eastern District of Michigan.

## GENERAL ALLEGATIONS

7.  On or about June 9, 2025, Plaintiff purchased a certain 2021 Dodge  RAM, VIN 3C63RRGL1MG537136 ("the vehicle") from SAMLLC.

8.  Before consummating the purchase of the vehicle, SAMLLC made the following material representations ("material representations") which also constituted express warranties, were false, and related to the vehicle:

    a.  That the vehicle's actual mileage on the date of sale was 25,494 actual miles.

9.  SAMLLC made the following representations by operation of law as a result of the sale of a written warranty or extended service contract within 90 days of the sale of the vehicle:

a.  The vehicle was merchantable.

b.  the vehicle was fit for its intended purpose.

10. Before executing the purchase agreement, SAMLLC made the following specific representations which constituted express warranties:

a.  That the vehicle's actual mileage on the date of sale was 25,494 actual miles.

11. The vehicle did not meet SAMLLC's specific representations which constituted express warranties.

12. SAMLLC disclaimed or limited the warranty of merchantability and fitness for use without doing so clearly and conspicuously.

13. On February 11, 2022, a new title was issued the vehicle and at the that time the mileage on the vehicle was contemporaneously recorded at 19,737 actual miles.

14. On March 21, 2022, the vehicle was serviced and at the that time the mileage on the vehicle was contemporaneously recorded at 30,625 actual miles.

15. On April 20, 2022, the vehicle was serviced and at the that time the mileage on the vehicle was contemporaneously recorded at 42,264 actual miles.

16. On June 20, 2022, the vehicle was serviced and at the that time the mileage on the vehicle was contemporaneously recorded at 66,445 actual miles.

17. On August 15, 2022, the vehicle was serviced and at the that time the mileage on the vehicle was contemporaneously recorded at 76,472 actual miles.

18. On August 31, 2022, the vehicle was serviced and at the that time the mileage on the vehicle was contemporaneously recorded at 83,098 actual miles.

19. On September 7, 2022, the vehicle was serviced and at the that time the mileage on the vehicle was contemporaneously recorded at 84,400 actual miles.

20. On October 3, 2022, the vehicle was serviced and at the that time the mileage on the vehicle was contemporaneously recorded at 96,300 actual miles.

21. On June 30, 2023, the vehicle was serviced and at the that time the mileage on the vehicle was contemporaneously recorded at 108,302 actual miles.

22. On July 15, 2023, the vehicle was serviced and at the that time the mileage on the vehicle was contemporaneously recorded at 108,511 actual miles.

23. On September 15, 2023, the vehicle was serviced and at the that time the mileage on the vehicle was contemporaneously recorded at 108,512 actual miles.

24. On March 20, 2024, the vehicle was serviced and at the that time the mileage on the vehicle was contemporaneously recorded at 22,981 actual miles.

25. At some point between September 15, 2023 and March 20, 2024, the vehicle's odometer was rolled back at least 85,531 miles.

26. When Defendant certified to the State of Michigan and to the Plaintiff that the vehicle's actual mileage on the date of sale was 25,494 actual miles, that certification was false, the Defendant knew or should have known it was false, and the certification was made knowing that subsequent purchasers such as the Plaintiff would be defrauded and damaged by the false odometer certification.

27. The vehicle constitutes a "good" under article 2 of the UCC, M.C.L. § 440.2101 *et seq*.

28. Plaintiff suffered damages as a result of the acts and omissions set forth herein.

## COUNT I -- Federal Odometer Act

29. Plaintiff incorporates the preceding allegations by reference.

30. By failing to provide Plaintiff with a legal and conforming odometer disclosure at the time of sale, SAMLLC has, with intent to defraud, violated the Federal Odometer Act, 49 U.S.C. § 32701-32711.

31. The odometer on the vehicle did not accurately reflect the actual miles of the vehicle at the time of sale.

32. The odometer statement presented to Plaintiff did not accurately reflect the odometer reading of the vehicle at the time the vehicle was sold to Plaintiff.

33. SAMLLC knew or had reason to know of the inaccuracy of the odometer at the time it sold the vehicle to Plaintiff.

34. SAMLLC knew or had reason to know of the inaccuracy of the odometer statement relating to the vehicle, which statement was presented to Plaintiff.

35. SAMLLC failed to provide the required disclosure of mileage on the reassignment of title as required by 49 U.S.C. §§32701-32711 *et seq*.

36. Plaintiff suffered damages as a result of the violations set forth herein.

### COUNT  II  -- Michigan Odometer Act

37. Plaintiff incorporates the preceding allegations by reference.

38. The odometer on the vehicle did not accurately reflect the actual miles of the vehicle at the time of sale.

39.    The odometer statement presented to Plaintiff did not accurately reflect the odometer reading of the vehicle at the time the vehicle was sold.

40.    SAMLLC knew or had reason to know of the inaccuracy of the odometer at the time it sold the vehicle to Plaintiff.

41.    SAMLLC failed to provide the required disclosure of mileage on the reassignment of title as required by M.C.L. §257.233a.

42.    Plaintiff suffered damages as a result of the violations set forth herein.

## COUNT  III  -- Violation of Michigan Consumer Protection Act

43.    Plaintiff incorporates the preceding allegations by reference.

44.    SAMLLC is engaged in trade or commerce as that terms is defined in M.C.L. § 445.902.

45.    SAMLLC has engaged in one or more of deceptive or unfair practices prohibited by the Michigan Consumer Protection Act, M.C.L.§ 445.903, including but not limited to the following:

a.    Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

b.    Using deceptive representations or deceptive designations of geographic origin in connection with goods or services.

c. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.

d. Representing that goods are new if they are deteriorated, altered, reconditioned, used, or secondhand.

e. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

f. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

g. Representing that a part, replacement, or repair service is needed when it is not.

h. Representing to a party to whom goods or services are supplied that the goods or services are being supplied in response to a request made by or on behalf of the party, when they are not.

i. Causing a probability of confusion or of misunderstanding with respect to the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction.

j.    Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

k.    Causing a probability of confusion or of misunderstanding as to the terms or conditions of credit if credit is extended in a transaction.

l.    Disclaiming or limiting the implied warranty of merchantability and fitness for use, unless a disclaimer is clearly and conspicuously disclosed.

m.    Representing that a consumer will receive goods or services "free", "without charge", or words of similar import without clearly and conspicuously disclosing with equal prominence in immediate conjunction with the use of those words the conditions, terms, or prerequisites to the use or retention of the goods or services advertised.

n.    Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

o.    Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

p.    Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest.

q.    Taking or arranging for the consumer to sign an acknowledgment, certificate, or other writing affirming acceptance, delivery, compliance with a requirement of law, or other performance, if the merchant knows or has reason to know that the statement is not true.

r.    Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

s.    Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold.

t.    Causing coercion and duress as the result of the time and nature of a sales presentation.

u.    Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

46.    Plaintiff suffered damages as a result of these violations of the Michigan Consumer Protection Act.

## COUNT IV -- Misrepresentation

47.    Plaintiff incorporates the preceding allegations by reference.

48.    The material representations were intended to induce the reliance of Plaintiff.

49.    The material representations did induce the reasonable reliance of Plaintiff.

50.    SAMLLC made the material representations with actual knowledge of their falsity.

51.    SAMLLC made the material representations with reckless disregard to their truth or falsity.

52.    SAMLLC made the material representations even though it should have known that they were false.

53.    These actions constitute a misrepresentation upon Plaintiff.

54.    Plaintiff suffered damages as a result of this misrepresentation.

## COUNT V  -- Breach of Contract

55.    Plaintiff incorporates the preceding allegations by reference.

56.    SAMLLC's tender of the performance did not conform as a result of the vehicle's mechanical defects, lack of merchantability, and lack of fitness for intended purpose which existed at the time of delivery.

57.    The failure of SAMLLC to deliver conforming goods, title, and follow up services at the contract price constitutes a material breach of contract.

58.    Plaintiff suffered damages as a result of this breach of contract.

## COUNT VI — Motor Vehicle Code Violations

59.    Plaintiff incorporates the preceding allegations by reference.

60.    SAMLLC's failure to accurately disclose mileage on the application for title constituted a violation of M.C.L. §257.235.

61.    Plaintiff may void the contract of sale as a result SAMLLC's violation of the Motor Vehicle Code.

## JURY DEMAND

62.    Plaintiff requests a jury trial in this case.

## **<u>REQUEST FOR RELIEF</u>**

Plaintiff requests that this Honorable Court assume jurisdiction over this case and including all supplemental claims, award actual damages, treble damages, statutory and punitive damages, costs, and attorney fees.

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:   /s/ Adam G. Taub
       Adam G. Taub (P48703)
       Attorney for David Taylor
       17200 West 10 Mile Rd. Suite 200
       Southfield, MI 48075
       Phone: (248) 746-3790
       Email: adamgtaub@clgplc.net

Dated: June 9, 2026